BENJAMIN R. BURDETTE ET AL., PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF FAIRVIEW ET AL.

Submitted March 12, 1901—Decided June 10, 1901.

The sixth section of "An act to authorize and incorporate rural cemetery associations and regulate cemeteries" provides "that it shall not be lawful to locate any new cemetery or burying-ground, or to enlarge any cemetery or burying-ground, in this state, without the consent and approval of the municipal authorities and board of health of the city, township, town or borough in which it is proposed to locate or enlarge said cemetery or burying-ground, upon application, in writing, for that purpose made;" and "that all persons making application as aforesaid for the location or enlargement of any cemetery shall accompany the same with a descriptive map of the premises they propose to occupy." *Held*—

1. That the map required by this provision need not describe the property shown thereon by metes and bounds, but that it sufficiently complies with the statute if, from an examination of it, the municipal authorities can readily determine the location, size and shape of such property.

2. That, by granting consent to the location of a proposed cemetery, the municipal authorities necessarily approve that location, within the meaning of the statute.

3. That, in order to obtain the municipal consent and approval to the appropriation of lands to cemetery uses, it is not necessary that the applicants therefor should be the owners or occupiers of such lands.

On *certiorari*.

Before Justices GUMMERE and FORT.

For the prosecutors, *Charles D. Thompson*.

For the defendants, *Corbin & Corbin*.

The opinion of the court was delivered by

GUMMERE, J. This writ brings up for review a resolution adopted by the mayor and council of the borough of Fairview, in the county of Bergen, granting consent to the location of a cemetery in that borough by the Fairview Cemetery Company.

The sixth section of "An act to authorize and incorporate rural cemetery associations and regulate cemeteries," as amended by the supplement of March 25th, 1885 (*Gen. Stat., p.* 355), provides that "it shall not be lawful to locate any new cemetery or burying-ground, or to enlarge any cemetery or burying-ground, in this state, without the consent and approval of the municipal authorities and board of health of the city, township, town or borough in which it is proposed to locate or enlarge said cemetery or burying-ground, upon application, in writing, for that purpose made;" and "that all persons making application as aforesaid, for the location or enlargement of any cemetery, shall accompany the same with a *descriptive* map of the premises they propose to occupy."

The first ground upon which the resolution is attacked is that the map accompanying the written application of the cemetery company submitted by it to the municipal authorities pursuant to this statutory provision was not sufficiently *descriptive* of the premises proposed to be subjected to cemetery uses, for the reason that the courses and distances of the outside lines of the property are not shown thereon. This, however, in our judgment, was not necessary. The object of the

map is to advise the municipal authorities of the location, size and shape of the property, and this, we think, is fairly done by the map presented with the petition. The north point is shown thereon, and it is drawn upon a scale, so that both the courses and distances can be readily ascertained. In addition, the southern boundary of the property is shown on the map to be the county line; the eastern boundary to consist of two public roads; the northern boundary to be, in part, the property of the railroad company known as the Hudson River Terminal Company, and, in part, the property of certain named landowners, and the western boundary to be a stream of water. The map is sufficiently descriptive of the premises to satisfy the requirement of the statute.

The second reason urged by the prosecutors for setting aside the resolution is that it does not express the approval, as well as the consent, of the municipal authorities, as required by the statute. The resolution reads as follows:

"*Resolved,* That the consent of this board is hereby given to the Fairview Cemetery Company, an incorporated association of this state, to locate a new cemetery or burying-ground within the borough of Fairview, upon a tract of land shown on the descriptive map, of the premises which they propose to occupy, accompanying their petition filed with this board."

It will be observed that the word "approval" is absent from the resolution, but, in our judgment, the municipality, by consenting to the location of this burying-ground by the cemetery company, necessarily approved it. It was not necessary that the resolution should use the very words of the statute. It is sufficient if the municipal action shows a practical compliance with it; and that the legislature considered that an approval of location would be shown by a consent to it would seem plain from the latter part of the sixth section of the act, which provides that "in case the local authorities grant the permit to locate or enlarge any cemetery or burial-ground, and the same shall be deemed objectionable by the inhabitants," the latter may apply to the state board of health to review the municipal action; the expression "grant the permit" being used as synonymous with "consent and approval."

By the resolution before us the municipal body granted a permit to the cemetery company to locate their cemetery at the place described in their map, and their resolution is not objectionable by reason of their failure to use the word "approval" in their grant.

The next ground of attack is that the cemetery company did not own the lands described in their petition, and shown by their map, at the time of their application for permission to devote it to cemetery purposes. There is nothing in the act from which it can be gathered that it was the legislative intent that ownership should precede municipal action. On the contrary, a reading of the statute would suggest the contrary view. The act declares that the applicants shall describe the premises "they propose to occupy," showing that even occupation was not necessary as a prerequisite to making the application. The legislature seems to have purposely avoided imposing upon applicants in these cases the unnecessary burden of acquiring title to the land which they desired to subject to cemetery uses, without their knowing whether or not they would ever be permitted to do so.

The only remaining ground of objection is that it appears from the map submitted by the cemetery company that a public road runs through the land described therein; and it is argued that the effect of the resolution is to vacate this street, in violation of the provision of the Borough act, which provides that public highways in the boroughs of this state shall only be vacated by ordinance. There is nothing in this point. The resolution does not attempt to vacate the highway, in terms, and the devotion of the premises in question to cemetery uses cannot have that effect. So much of the land shown on the map as lies within the lines of this highway will, notwithstanding the resolution under review, remain subject to the public user of travel, and cannot be used for mortuary purposes, unless, and until, proceedings are taken for its vacation.

The resolution should be affirmed.